1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSEPH A. ALMEIDA,                       No. 2: 17-cv-1145 JAM KJN P

12                   Petitioner,

13         v.                                  ORDER & FINDINGS &
                                               RECOMMENDATIONS
14    JOEL MARTINEZ,

15                   Respondent.

16

17    I.  Introduction

18         Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas

19    corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2014 conviction for two counts of

20    willfully inflicting corporal injury (Cal. Penal Code 273.5(a)) (counts one and two), and infliction

21    of great bodily injury as to count two (Cal. Penal Code § 12022.7(e)).  Petitioner was also found

22    guilty of an out-on-bail enhancement with respect to count two.  (Cal. Penal Code § 12022.1).

23    Petitioner is serving a sentence of 11 years.

24         The petition raises the following claims:  1) ineffective assistance of counsel (2 claims); 2)

25    Brady[1] error; and 3) the trial court improperly excluded impeachment evidence.  In the petition,

26    petitioner also argues that he did not receive fair notice of the amendment of the information to

27    _____

28    [1]  Brady v. Maryland, 373 U.S. 83, 87 (1967).

                                        1

include the great bodily injury enhancement.  The undersigned herein addresses the merits of this claim although it is not exhausted.

Additionally, in his November 2, 2018 motion for an evidentiary hearing, petitioner raises a claim alleging that trial counsel was ineffective for failing to call a drug recognition expert.  The undersigned herein addresses this (exhausted) claim.

Petitioner also filed two motions to expand the record and for evidentiary hearings.  (ECF Nos. 35, 41.)  Petitioner also filed a motion to stay in order to exhaust additional claims.  (ECF No. 39.)

For the reasons stated herein, the undersigned recommends that the petition be denied.  Further, the undersigned recommends that petitioner's motions to expand the record and for evidentiary hearings and petitioner's motion to stay be denied.

II.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

////

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

3

also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but

4

does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. <u>Johnson v. Williams</u>, 568 U.S. 289, (2013) (citing <u>Richter</u>, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). <u>Stanley</u>, 633 F.3d at 860; <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes</u>, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. <u>Stancle v. Clay</u>, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v. Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006).

////

III. Background

The opinion of the California Court of Appeal contains a procedural summary. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein:

> [Petitioner] was charged by complaint with count one – infliction of corporal injury on a cohabitant on January 21, 2014 (Pen. Code § 275.5, subd. (a)), [footnote omitted] and count two – infliction of corporal injury on the parent of his child on April 6, 2014 (§ 273.5, former subd. (a)). Both crimes were committed on Krystal Wilson. The complaint also alleged that [petitioner] was out on bail when he committed the crimes. (§ 12022.1).
>
> After a preliminary hearing, [petitioner] was held to answer on the complaint, which was deemed an information.
>
> On the day the parties began selecting a jury, the district attorney moved to file an amended information, adding an enhancement for infliction of great bodily injury to count two. The defense did not object, and the trial court granted the motion.
>
> A jury convicted [petitioner] on both counts and found true the great bodily injury enhancement allegations. The district attorney moved to dismiss the "out on bail" enhancement as to count one, and the trial court found true the out on bail enhancement as to count two.
>
> The trial court sentenced [petitioner] to an aggregate term of 11 years in state prison, consisting of the upper term of four years on count two, with a consecutive middle term of four years on the great bodily injury enhancement, one year (one-third the middle term) on count one, and two years for the out on bail enhancement.

Respondent's Lodged Document 7, at 2-3.

Petitioner's opening brief on appeal contains a factual summary. (Respondent's Lodged Document 4.) After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein.

> Krystal Wilson (hereinafter "Wilson"), the ex-girlfriend and mother of [petitioner's] 6-month old daughter, having been released from custody on September 11, 2014, commenced communication with [petitioner]. (RT 41-43.) In those communications, she informed [petitioner] that she still loved him. (RT 44.)
>
> On December 26, 2012, [petitioner] found out that Wilson was escorting (making money from prostitution) and was using controlled substances. (RT 47, 48.) [Petitioner] showed up at the hotel room where Wilson was staying and began pounding on the door. Someone called the police. (RT 51-52.) [Petitioner] and

6

Wilson had a heated argument and [petitioner] ended up taking Wilson's laptop computer. (RT 52-53.) Wilson did not recall if [petitioner] also took her I.D. and Social Security card. (RT 53.) Wilson denied telling officers that [petitioner] started slapping her with an open hand on her face and in the back of the head at least 8 or 9 times. (RT 54.)

SPD Officer William Tall (hereinafter "Tall"), on December [2]6, 2012, responded to the extended stay hotel and spoke with Wilson. (RT 178.) Wilson said that [petitioner] was upset because Wilson had been talking with another man and [petitioner] took her Social Security card and another California I.D. card. (RT 180.) Wilson indicated that the day before she and [petitioner] had an argument, that [petitioner] became upset and started slapping her 8 to 9 times in the face with the back of his hand. (RT 182.)

Wilson described a second incident occurring on January 26, 2013, wherein she and [petitioner] had an argument regarding [petitioner's] ex-girlfriend calling him. (RT 55.) Wilson was under the influence of methamphetamine at the time of the argument. (RT 56.) During the course of the argument which occurred while Wilson was a passenger in the car driven by [petitioner], Wilson kicked out one of the windows. (RT 56.) Wilson put her hands on [petitioner], and [petitioner] restrained Wilson by putting her in a headlock. (RT 58.) Wilson denied telling an officer that [petitioner] got out of the car, came around to the front passenger seat, and grabbed Wilson's hair. (RT 60-61.) Wilson further denied telling an officer that [petitioner] pulled her out of the car by her hair, that she landed on her elbow and some gravel went into her ear. (RT 161.) However, she did admit that when officers arrived her elbow was a little bit scraped up. (RT 61.)

On January 26, 2013. SPD Officer Tara Carson (hereinafter "Carson") spoke with Wilson. (RT 187.) Carson observed Wilson bleeding slightly from the right side of her mouth and having a scrape on her right ear and elbow. (RT 188.) Wilson stated that [petitioner] got upset with her regarding her phone and that while they were driving he grabbed her in a headlock, pulled her into his stomach, and that she decided to kick out the front passenger window, which she did, actually breaking it. (RT 189.)

Wilson testified regarding a third incident on January 21, 201[4]. (RT 63.) She and her friend, Desiree Prior (hereinafter "Prior") got into a fight and [petitioner] intervened. (RT 69.) During the fight with Prior, Wilson punched Prior and Wilson ended up tripping and falling to the ground. (RT 69.) Wilson admitted she told a different version of events to the police. She told the police that [petitioner] got angry and began slapping her in the face with the back of his hand. (RT 69-70.) Wilson denied telling police that [petitioner] pushed her face onto the ground. (RT 71.) She admitted telling the police that [petitioner] pushed her feet up to her shoulders and was choking her from behind. (RT 71.) However, she testified that that wasn't true at all. (RT 73.) Wilson indicated that as a result of the fight with Prior, Wilson had a black eye, a busted lip and a bruise on her butt.

Prior testified that on January 21, 2014, Prior was visiting [petitioner] at his house. When Wilson arrived, Prior was in the closet. Wilson came in attacking Prior. (RT 273-274.) Prior hit Wilson in the eye more than once. [Petitioner] tried to prevent the fight between Wilson and Prior. (RT 275.) [Petitioner] did not hit Prior and Prior did not observe [petitioner] hit Wilson. (RT 275.) Prior tried to gather herself and attempted to leave but Wilson kept coming after her. At some point the fight stopped because [petitioner] had intervened. (RT 276.) Prior observed Wilson leave and a little bit after that Prior left also. (RT 276.) During the fight, Prior had struck Wilson a number of times with her fist. (RT 287.)

Cassandra Solomon (hereinafter "Solomon") was a neighbor of [petitioner] and Wilson on January 21, 2014. At around 1:00 to 1:30 in the morning, she heard loud hysterical banging on her door. (RT 162.) When her boyfriend opened the door, there was no one there. (RT 162.) While she was still at the front door, she observed a girl come running up asking for help. (RT 162.) The female (identified as Wilson), was visibly shaking, stating she was running from her boyfriend who was beating her up. Wilson had a black eye and was crying. (RT 165-166; 173.) Wilson told Solomon that her boyfriend had her on the ground with her legs lifted over her stomach and was kicking her down. (RT 169.) Wilson lifted up her shirt showing bruises. (RT 170.)

SPD Officer Matthew Nichols (hereinafter "Nichols"), spoke with Wilson on January 21, 2014 at a residence on Natomas Street relating to an incident. Wilson had two scratch marks or abrasions across her right eye, swelling of her eye, and bruising around the right side of her face and cheek area. (RT 197.) Wilson stated she was beaten up by [petitioner], specifically that she was slapped at least 5 times in the face with a back hand, placed on the ground, and he[r] feet pushed over her shoulders while he choked her from behind. (RT 198.) [At the time of the January 21, 2014 incident, Wilson was eight months pregnant. (RT at 63).]

Following [petitioner's] arrest for the January 21, 2014 incident, [petitioner] was subsequently released from jail and Wilson and [petitioner] started living together again. At some point they had separated and on April 6, 2014, they were not living together. (RT 104.) On that date, Wilson [testified that she] was under the influence of GHB (the date rape drug), [and] was driving a friend's car and stopped at a gas station because she started feeling the effects of GHB. (RT 104-105.) Wilson called [petitioner] indicating she needed help. (RT 106-106.) [Petitioner] followed Wilson who drove her friend's car back and [petitioner] gave her a ride. (RT 106.)

Wilson started feeling ill, began throwing up, and [petitioner] tried to help her. He got some water and was pouring it on her trying to wake her up. (RT 106.) Wilson began to stumble and at some point fell over and bumped her head on a table. (RT 107.) Around that same time, [petitioner's] friend Manny came over and was trying to serve Wilson with a restraining order. (RT 108.)

////

8

[Petitioner] eventually dropped Wilson off at a house. When [petitioner] pulled up to the house, Wilson and [petitioner] were arguing, and Wilson told her friend to come outside. She was trying to get her friend to beat [petitioner] up and [petitioner] took off. (RT 110.) Shortly thereafter, Wilson had her girlfriend call the police. (RT 110.) Wilson had a bump on her forehead. (RT 111.)

Law enforcement eventually arrived and took photographs of Wilson. Wilson did not recall having a black eye. (RT 112.) Wilson did go to the hospital for her injuries. (RT 113.)

Wilson told an officer that she got into a verbal argument with [petitioner] because he found out that Wilson was messing around with another guy. However, Wilson said that was not true. (RT 113.) Wilson told an officer that [petitioner] punched her in the head approximately 5 times; however, she indicated that that did not happen. (RT 113-114.) Wilson further admitted that she told an officer that after [petitioner] punched her, he urinated on her. Again, Wilson indicated that did not happen. (RT 114.) Wilson further told an officer that she curled up in a ball on the floor in the living room and was not able to see what [petitioner] was doing and his urine got on her hair and face. She indicated that this never happened. (RT 114.) Wilson further indicated that she told an officer that [petitioner] threw her in a shower with all her clothes on and sprayed her with cold water; however, that did not occur. She further told an officer that while she was in the shower, she grabbed a razor blade and cut her own arm because she was trying to get [petitioner] to stop; however, that was not true. She testified that she cut her own arms but that was earlier in the day. (RT 115.)

Wilson admitted that there had been times where she and [petitioner] had got into a pushing/shoving argument, but that [petitioner] had never abused her causing her to be injured. (RT 118.)

Although Wilson testified that she did black out on that date, and had blacked out before, she indicated that it was because of her being under the influence of GHB before and "other stuff." (RT 118.)

She further stated that she did not know if she lost consciousness, but she did know that she "blacked out." (RT 118.)

Wilson indicated that at no time did [petitioner] ever directly ask her to tell a different story, but always asked her to tell the truth. (RT 142.)

SPD Officer John Stegner (hereinafter "Stegner"), on April 6, 2014, was dispatched to 3625 Altos Avenue and spoke with Wilson. (RT 216-217.) Wilson stated that she and [petitioner] were dating for approximately 3 years, living together off and on for approximately 2 years, and had 1 child together. (RT 217-218.) Wilson indicated that she and [petitioner] got into a verbal argument at [petitioner's] residence at 3717 Mahogany Street about 1 hour prior to Stegner contacting her. (RT 218.) Wilson indicated that [petitioner] became upset, started hitting her approximately 5 times. She did not know if it was a closed or open fist. [Petitioner] urinated on her, picked her

9

up, and put her in a shower. [Petitioner] put water on her and she grabbed a razor and cut her wrists to try to get him to stop. (RT 218.) Wilson had swelling to her eyes, forehead, her knuckles were swollen, and had marks on her left forearm. (RT 219.)

Mandy Rhein-Edwards (hereinafter "Rhein-Edwards"), in April 2014, went to [petitioner's] house to serve a restraining order on Wilson. When she handed the restraining order to Wilson, Wilson was not sober, became angry and furious. (RT 243.) Wilson got mad, kind of ripped up the restraining order, did not sign it, and made a comment that if she couldn't have her daughter, then she was going to make sure that petitioner couldn't have her either.

Erzi Enders (hereinafter "Enders"), a registered nurse in Emergency at Sutter General Hospital, treated Wilson on April 6, 2014. (RT 232-233.) Wilson had injuries on her right and left eye and also on her forehead. She was also complaining of right arm, left arm, left forearm and wrist pain. (RT 236.) Enders asked Wilson if she lost consciousness. Wilson indicated that she did. (RT 236.) Enders did not make any notations in her notes that Wilson appeared to be under the influence of any sort of drugs. (RT 237.) Enders could not recall where Wilson said she was at, at the time she indicated she lost consciousness. (RT 240.)

Sacramento County Sheriff's Officer Dennis Prizmich (hereinafter "Prizmich") testified as an expert on domestic violence issues. (RT 147-151.) Among opinions rendered by Prizmich, he indicated that in cases he has had, about 85% of domestic violence victims do not want charges filed. (RT 155.) Prizmich said that after initially speaking with domestic violence victims, they oftentimes recant or minimize the conduct that was initially reported. (RT 156.)

Respondent's Lodged Document 4 at 5-11.

IV.  Ineffective Assistance of Counsel

   A.  Legal Standard

   To prevail on an ineffective assistance of counsel claim, a petitioner must show that (i) his counsel's performance was objectively deficient and (ii) this deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

   Counsel's performance was deficient if it "fell below an objective standard of reasonableness" as measured under "prevailing professional norms."  Wiggins v. Smith, 539 U.S. 510, 521 (2003).  It is the petitioner's burden to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  There is "a strong presumption that counsel's representation was

10

within the wide range of reasonable professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (internal quotations omitted).

To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 189 (2011) (internal quotations omitted). The question is whether the deficient performance resulted in a probability of error "sufficient to undermine confidence in the outcome" of the trial. <u>Id.</u> (internal quotations omitted). "That requires a substantial, not just conceivable, likelihood of a different result." <u>Id.</u> (internal quotations omitted).

B. <u>Counsel's Alleged Failure to Object to Amendment of Information</u>

Petitioner alleges that his trial counsel was ineffective for failing to object to the amendment of count two of the information to include a great bodily injury enhancement. Petitioner raised this claim on direct appeal and in his habeas corpus petitions filed in state court. Both the California Court of Appeal and Sacramento County Superior Court issued reasoned opinions denying this claim. (Respondent's Lodged Documents 7, 11.) The Superior Court's opinion is the last reasoned state court opinion addressing this claim. However, the undersigned discusses the opinion of the California Court of Appeal and the Superior Court, as both opinions are helpful in addressing petitioner's claim.

The Superior Court denied petitioner's ineffective assistance of counsel claim because petitioner failed to explain how or why the evidence regarding the great bodily injury enhancement was inadequate to support the charge. (Respondent's Lodged Document 11 at 1.) The Superior Court stated that the "level of evidence required to support an information is much less than that required to support a conviction." (<u>Id.</u>) "Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information." (<u>Id.</u>) "The record from the preliminary hearing shows that there was evidence to support probable cause to add the charges." (<u>Id.</u>) "Indeed, a jury ultimately found that the evidence supported conviction." (<u>Id.</u>) "It is not deficient performance for defense counsel to fail to make objections that could reasonably determine would be futile…or objections that would have been overruled." (<u>Id.</u> at 2.)

1       The California Court of Appeal denied this ineffective assistance of counsel claim for the

2 reasons stated herein:

> Defendant contends his trial attorney provided ineffective assistance of counsel because he failed to object to the amendment of count two of the information to include a great bodily injury enhancement. He argues that, because there was insufficient evidence of great bodily injury presented at the preliminary hearing, the trial court would have denied the motion to amend the information if counsel had objected. To the contrary, the evidence at the preliminary hearing was sufficient, and the trial court would have granted the motion to amend regardless of whether defense counsel objected.
>
> To prevail on his ineffective assistance claim, defendant must show (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." (Strickland v. Washington (1984) 466 U.S. 668, 687 (Strickland .)
>
> As to the first prong—deficient performance—a "strong presumption" exists that counsel acted professionally. (Strickland, supra, 466 U.S. at p. 689.)
>
> As for the second prong—prejudice—"defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Strickland, supra, 466 U.S. at p. 694.) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (Id. at p. 697.)
>
> In this case, defendant establishes neither deficient performance nor prejudice because there was sufficient evidence of great bodily injury presented at the preliminary hearing, which allowed the prosecutor to move to amend the information with a great bodily injury allegation.
>
> Generally, the prosecution may not amend an information to add an enhancement allegation unless the evidence presented at the preliminary hearing is sufficient to support that enhancement. (See § 1009; Salazar v. Superior Court (2000) 83 Cal.App.4th 840, 846 [defendant may bring section 995 motion to challenge sufficiency of evidence to support enhancement allegations].) Here, the prosecution moved, after the preliminary hearing, to amend the information by adding a great bodily injury allegation to count two. Defendant claims the evidence was insufficient to support a finding that the enhancement allegation was true, but he did not object to the amendment. Therefore, he argues on appeal that counsel was deficient.

////

"Great bodily injury 'means a significant or substantial physical injury.' (§ 12022.7, subd. (f); [citations].) [The Supreme Court] has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.]" 'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the jury to decide." (People v. Cross (2008) 45 Cal.4th 58, 63–64, fn. omitted.)

Defendant argues: "Victim Wilson testified that she had bruising to her head, eye and temple areas. She also testified that she had some swelling around her eye. Lastly, although she indicated she had bruising on her wrist area and may have had a concussion, although specifically testified that she didn't really know. Although she went to seek medical treatment, she was not admitted and was sent home with prescriptions for Valium and Norco. She never sought any followup treatment regarding her injuries." (Record citations omitted.)

This summary does not do justice to the evidence provided at the preliminary hearing concerning Wilson's injuries.

Wilson testified that, after defendant's attack on her, she was confused and did not know what was going on. She went to the hospital, where she was diagnosed with a concussion and was prescribed Valium and Norco, even though she was not admitted to the hospital.

In addition to Wilson's testimony at the preliminary hearing, Officer John Stegner testified concerning his observations of Wilson's injuries. When Officer Stegner first arrived at the home where Wilson had taken refuge, Wilson "was just sitting on the couch like on all fours, hunched over, not really saying anything." She told Officer Stegner that defendant had hit her in the head approximately five times and urinated on her face and hair. Officer Stegner testified: "She had swollen and black eyes. She had a welt on her forehead. Her knuckles were swollen, and she had some cuts on her left forearm." The prosecution also introduced pictures of Wilson's injuries.

"An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' [Citations.]" (People v. Washington (2012) 210 Cal.App.4th 1042, 1047.) Extensive bruising and swelling suffices to show great bodily injury. (People v. Jaramillo (1979) 98 Cal.App.3d 830, 836–837.)

Here, Wilson had bruised and swollen eyes, and she sustained a concussion (a brain injury). This evidence was sufficient to establish great bodily injury, such that the trial court would not have denied the prosecutor's motion to amend the information even if defense counsel had objected. Therefore, defendant has failed in his attempt to establish both (1) deficient performance in not objecting to the amendment (because the objection would have been meritless

(People v. Ochoa (1998) 19 Cal.4th 353, 463 [failure to make meritless objection not deficient performance]) and (2) prejudice from the amendment (because the motion was appropriately granted, as explained above).

Respondent's Lodged Document 7 at 3-6.

The undersigned herein discusses the testimony from the preliminary hearing regarding Wilson's injuries from April 6, 2014. At the preliminary hearing, Wilson testified that petitioner did not cause the injuries she suffered on April 6, 2014. Wilson testified that she thought she fell and hit her head on a glass table. (CT at 60.) Wilson testified that when her friends called 911, she was "dazed and confused," although she appeared to attribute this confusion to her intoxication on GHB. (Id. at 64.) Wilson testified that her hands were bruised and that she had a lump on her forehead. (Id. at 66.) She admitted telling an officer that petitioner punched her in the head approximately five times, but testified that this statement was not true. (Id. at 69-70.)

Wilson was shown photos of herself taken following the incident. (Id. at 76.) Wilson admitted that one of the photos showed bruising between her eyebrows. (Id. at 76-77.) Wilson admitted that another photo showed bruising in her forehead/temple area. (Id. at 77.) Wilson admitted that another photo showed swelling and bruising on the side of her face. (Id. at 78.) Wilson admitted that another photo showed bruising and swelling to her forehead area. (Id. at 78-79.) Wilson admitted that another photo showed bruising and swelling around her eye. Id. at 79.)

Wilson testified that after the incident, she went to the hospital and was diagnosed with a concussion. (Id. at 81-82.)

At the preliminary hearing, Sacramento Police Officer Stegner testified that on April 6, 2014, he was dispatched to a domestic violence call. (Id. at 97.) When he arrived, he saw Wilson sitting on a couch. (Id. at 98.) She had swollen and black eyes. (Id.) Wilson also had a welt on her forehead. (Id.) Wilson's knuckles were swollen and she had cuts on her arm. (Id.) Stegner testified that Wilson was sitting on the couch on all fours, hunched over, not really saying anything. (Id. at 99.)

Stegner testified that Wilson told him that petitioner hit her in the head approximately five times. (Id. at 100-01.) Stegner testified that he did not observe Wilson show any signs of alcohol

14

or drug intoxication.  (Id. at 104.)

Under California law, the trial court may permit amendment of an information at any time during the proceedings, even after the evidence has closed, provided the amendment is supported by evidence at the preliminary hearing and does not prejudice the defendant's substantial rights. Cal. Pen.Code § 1009; People v. Birks, 19 Cal.4th 108, 129 (1998); People v. Arevalo–Ireheta, 193 Cal.App.4th 1574, 1580-81 (2011); People v. Winters, 221 Cal.App.3d 997, 1005 (1990).

The bruising, swelling and welt on Wilson's face, described at the preliminary hearing, as well as Wilson's testimony that she was diagnosed with a concussion, were sufficient evidence to support the enhancement.  Based on this evidence, petitioner has not shown how amendment of the information prejudiced his rights.  For these reasons, an objection by petitioner's counsel to the prosecutor's request to amend count two of the information to include a great bodily injury enhancement would have been denied.  Counsel did not act unreasonably in failing to make this objection.  Therefore, petitioner has not established either prong of the Strickland test for demonstrating ineffective assistance of counsel.

For the reasons discussed above, the denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

C.  Alleged Failure to Investigate

Petitioner alleges that his counsel was ineffective for failing to investigate and present evidence of Wilson's prior GHB use.  Petitioner alleges that this evidence could have been used to impeach Wilson.

In the answer, respondent contends that for the first time in his federal habeas corpus petition, petitioner argues that the evidence regarding Wilson's prior GHB use was relevant for impeachment purposes.  (ECF No. 22 at 20, fn. 8.)  In other words, this claim is not exhausted.

Respondent is correct that in state court petitioner only argued that the evidence of Wilson's prior GHB use was exculpatory.  In state court, petitioner argued that evidence of Wilson's prior GHB use could have been introduced to bolster Wilson's testimony that her April 6, 2014 injuries were due to GHB intoxication.  (See Respondent's Lodged Documents 10, 12,

14.)

       In an abundance of caution, the undersigned herein addresses both claims, i.e., counsel was ineffective for failing to investigate and present evidence of Wilson's prior GHB use because it was exculpatory and impeachment evidence. For the reasons stated herein, the undersigned finds that both claims are without merit. <u>See</u> 28 U.S.C § 2254(b)(2) (an application for habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust state court remedies).

*Background to Petitioner's Claims*

       Petitioner alleges that Wilson was hospitalized on May 2, 2013, because of her GHB addiction. Petitioner alleges that during the May 2, 2013 incident, she told an officer that she took GHB before a court appearance and lost consciousness. In support of this claim, petitioner cites a medical record for Wilson attached to the petition. (ECF No. 1 at 47.) This record indicates that on May 2, 2013, Wilson was admitted to Sutter General Hospital. (<u>Id.</u>) The record describes her chief complaint as, "Status post GHB overdose, acute respiratory failure requiring intubation." (<u>Id.</u>) The record states that after taking GHB, she "essentially had loss of consciousness, became sonorous and unresponsive." (<u>Id.</u>) The record described her past medical record as including, "multi-drug abuse, namely methamphetamine and GHB." (<u>Id.</u>) The report also states that Wilson had a recent Emergency Room visit in April where she had a left-sided rib fracture as well as a small splenic laceration. (<u>Id.</u>)

*Analysis*

       The Superior Court is the last state court to issue a reasoned decision addressing petitioner's claim that counsel was ineffective for failing to investigate Wilson's medical records on the grounds that these records would have supported Wilson's testimony that her April 6, 2014 injuries were due to GHB intoxication. The Superior Court denied this claim for the reasons stated herein:

> Petitioner's next claim is that his attorney failed to investigate medical records showing that the victim injured herself while under the influence of the drug GHB. Specifically, he points to a May 2, 2013 medical report from Sutter General Hospital documenting the victim's history of drug abuse and injuries. With respect to a claim

16

of ineffective assistance of counsel for failing to investigate a possible defense, a court must examine the reasonableness of the investigation in light of defense counsel's strategy. (In re Lucas (2004) 33 Cal.4th 682, 725.) It is not sufficient for a petitioner to show that counsel could have conducted a more thorough investigation. The more important issue is whether it was reasonable to "forgo further investigation in light of the defense strategy counsel ultimately adopted." (In re Andrews (2002) 28 Cal.4th 1234, 1255.)

Petitioner has failed to show that counsel failed to conduct a reasonable investigation into the victim's medical history. The relevancy of the hospital report is marginal as the incidents underlying his conviction occurred in January and April of 2014, well after the report was written. More importantly, he has not shown prejudice since the victim's drug use as a cause of injury was entered into evidence. The victim testified that petitioner did not assault her and that she lied to police because she wanted to get him in trouble. Instead, she said that her injuries in January were caused by another woman and her injuries in April could have been the result of her high level of GHB intoxication. In light of this testimony, further investigation into her drug use would have been cumulative. As such, petitioner has not shown that additional investigation into the victim's medical history would have yielded a different result.

(ECF No. 1 at 33.)

At the outset, the undersigned cannot determine whether counsel was aware of Wilson's May 12, 2013 hospital record at the time of petitioner's trial, as alleged by petitioner. For that reason, the undersigned cannot determine whether counsel acted reasonably with respect to his investigation of these records. However, for the reasons stated herein, the undersigned finds that petitioner has not demonstrated prejudice based on counsel's failure to introduce Wilson's May 12, 2013 hospital record at trial.

In the answer, respondent correctly notes that Wilson's May 2, 2013 hospital record does not state that she injured herself on that date due to GHB intoxication. Rather, this record states that she was brought to the hospital after having been found unconscious. More importantly, as observed by the Superior Court, Wilson testified that her April 6, 2014 injuries were caused by GHB intoxication. Evidence that Wilson had abused GHB in May 2013 was cumulative of this testimony.

The undersigned further finds that the evidence that petitioner assaulted Wilson on April 6, 2014, was strong. This evidence included Wilson's statement to police following the incident that petitioner assaulted her. In addition, Nurse Enders testified that Wilson told her that she

1   (Wilson) had been assaulted.  (RT at 235.)  The jury also heard evidence that petitioner had

2   assaulted Wilson on other occasions.

3       Based on the strong evidence that petitioner assaulted Wilson on April 6, 2014, there is no

4   reasonable probability that evidence of Wilson's GHB intoxication in May 2013 would have

5   resulted in a different verdict.  In other words, there is no reasonable probability that the jury

6   would have believed Wilson's testimony that her April 6, 2014 injuries were due to GHB

7   intoxication had they been presented with evidence regarding her May 2, 2013 hospitalization due

8   to a GHB overdose.  Accordingly, for the reasons discussed above, the denial of this claim by the

9   Superior Court was not an unreasonable application of clearly established Supreme Court

10  authority.

11      Petitioner also appears to argue that trial counsel failed to investigate Wilson's April 2013

12  medical records, mentioned in the May 2, 2013 hospital records.  Petitioner raised this claim in

13  the habeas petition filed in the Superior Court.  (Respondent's Lodged Document 10).  However,

14  petitioner did not raise this claim in the habeas corpus petition filed in the California Supreme

15  Court.  (Respondent's Lodged Document 14.)   Therefore, this claim is not exhausted.

16  Nevertheless, for the reasons stated herein, this claim is without merit.  28 U.S.C. § 2254(b)(2)

17  (petition may be denied notwithstanding failure to exhaust state court remedies).

18       Petitioner states that Wilson's May 2, 2013 hospital record states that in April 2013,

19  Wilson was treated in the emergency room for a rib fracture and small splenic laceration.  (ECF

20  No. 1 at 47.)  Petitioner argues that Wilson's April 2013 hospital records were further evidence of

21  Wilson suffering injuries caused by GHB intoxication.

22      Petitioner's claim that Wilson's April 2013 injuries were caused by her GHB intoxication

23  is speculative and not supported by any evidence.[3]  In any event, the undersigned finds that there

24  is no reasonable probability that the jury would have believed Wilson's testimony that her April

25  6, 2014 injuries were due to GHB intoxication had the jury been presented with evidence that she

26

27  [3]  Petitioner's May 2, 2019 motion for an evidentiary is based on Wilson's February 23, 2019
    declaration that her GHB intoxication caused her April 20, 2013 injuries.  The undersigned herein
28  addresses this declaration in the discussion of petitioner's motion to stay.

                                        18

| | |
|---|---|
| 1 | suffered injuries in April 2013 due to GHB intoxication.  The undersigned makes this finding |
| 2 | based on the strong evidence that petitioner caused Wilson's April 6, 2014 injuries. |
| 3 | Petitioner also argues that the May 2, 2013 hospital record, containing evidence of |
| 4 | Wilson's past GHB intoxication, would have been admissible to impeach Wilson.  Petitioner does |
| 5 | not cite the legal grounds on which he claims the May 2, 2013 report could have been offered as |
| 6 | impeachment evidence. |
| 7 | As discussed above, Wilson testified that her April 6, 2014 injuries were due to GHB |
| 8 | intoxication.  In other words, Wilson did not dispute her GHB intoxication.  Therefore, evidence |
| 9 | of her past hospitalization for GHB intoxication would not have impeached her trial testimony. |
| 10 | See California Evidence Code § 1202 ("Evidence of a statement or other conduct by a declarant |
| 11 | that is *inconsistent* with a statement by such declarant received in evidence as hearsay evidence is |
| 12 | not inadmissible for the purpose of attacking the credibility of the declarant though he is not |
| 13 | given and has not had an opportunity to explain or to deny such inconsistent statement or other |
| 14 | conduct.") (italics added).  In other words, Wilson's May 2013 hospital record was not |
| 15 | impeachment evidence.  Accordingly, petitioner was not prejudiced by trial counsel's failure to |
| 16 | investigate and offer the May 2, 2013 hospital record as impeachment evidence because there is |
| 17 | no reasonable probability that it would have been admitted as impeachment evidence.[4] |
| 18 | Petitioner also attaches to his petition a "Prehospital Care Report Summary" by the |
| 19 | Sacramento Fire Department dated April 30, 2015.  (ECF No. 1 at 49.)  This document indicates |
| 20 | that on that date, Wilson was taken to Sutter General Hospital after her vehicle was found running |
| 21 | and parked in the middle of an intersection.  (Id. at 50.)  Wilson was unresponsive with shallow |
| 22 | breathing.  (Id.)  Petitioner was convicted on October 22, 2014.  (CT at 161.)  Thus, the |
| 23 | "Prehospital Care Report Summary" did not exist at the time of petitioner's trial.  Accordingly, |
| 24 | petitioner's ineffective assistance of counsel claim based on trial counsel's failure to investigate |
| 25 | this record is without merit. |
| 26 | //// |
| 27 | |
| 28 | |

---

[4]  For the same reason, evidence that Wilson suffered injuries caused by GHB intoxication in April 2013 would not have been impeachment evidence.

D. <u>Alleged Failure to Present Expert Witness</u>

On November 2, 2018, petitioner filed a motion for an evidentiary hearing.  (ECF No. 35.) Petitioner seeks an evidentiary hearing, in part, regarding a claim that his trial counsel was ineffective for failing to present a drug recognition expert to "enlighten the jury as to the symptoms, behavior, effects and hazards of GHB consumption."  (<u>Id.</u> at 36.)  Petitioner appears to argue that a drug recognition expert could have corroborated Wilson's testimony regarding the effects of GHB.  Petitioner also claims that a drug recognition expert could have challenged the conclusion that Wilson suffered a concussion on April 6, 2014, because the symptoms she exhibited at the hospital could have been caused by GHB.

The undersigned finds that petitioner raises this claim in the instant action because he seeks an evidentiary hearing as to this claim.  Petitioner raised this claim in his habeas corpus petition filed in the California Supreme Court.  (Respondent's Lodge Document 14.)  Because the California Supreme Court did not issue a reasoned decision addressing this claim, the undersigned herein independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  <u>Stanley</u>, 633 F.3d at 860; <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

As discussed above, at trial, Wilson testified that she was under the influence of GHB during the April 6, 2014 incident.  (RT at 104.)  Wilson testified that based on the amount of GHB she took that day, she felt "drunk, like times ten.  Intensified."  (<u>Id.</u> at 105.)  Wilson testified that after petitioner took her to his house, she felt sick and began throwing up.  (<u>Id.</u> at 106.) Wilson testified that she had no balance:  "I would stumble and stuff and, like I said, it is just very vague that day."  (<u>Id.</u> at 107.)  Wilson testified that at some point she fell over and bumped her head on a table.  (<u>Id.</u>)  Wilson testified, "…and I must have nodded out which happens a lot during GHB."  (<u>Id.</u>)

As discussed above, Wilson's testimony that her April 6, 2014 injuries were due to GHB intoxication was contradicted by strong evidence that petitioner caused her injuries.  In addition, Officer Stegner testified that when he spoke with Wilson after the incident, she did not appear to be intoxicated or impaired.  (RT at 220.)  Nurse Enders, who treated her at the hospital following

the incident, testified that she did not observe any signs or symptoms of Wilson being under the influence.  (Id. at 237.)  Based on the strong evidence that petitioner caused Wilson's injuries, there is no reasonable probability that the outcome of the trial would have been different had a drug recognition expert provided testimony corroborating Wilson's testimony regarding the effects of GHB.

Petitioner also claims that a drug recognition expert could have testified that the symptoms of a concussion are similar to the symptoms of GHB intoxication.  Assuming this is true, based on the strong evidence that petitioner caused Wilson's injuries, the undersigned finds that there is no reasonable probability that the outcome of the trial would have been different had a drug recognition expert testified that the symptoms of a concussion are similar to the symptoms of GHB intoxication.  Moreover, even if Wilson did not suffer a concussion, her other injuries were sufficient to support the great bodily injury enhancement.  See People v. Jaramillo, 98 Cal.App.3d 830, 836-37 (1979) ("An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises or abrasions is sufficient for a finding of 'great bodily injury.")

After independently reviewing the record, the undersigned finds that the denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

V.  Notice of the Charges

In a claim related to his ineffective assistance of counsel claim, petitioner also argues that he did not receive fair notice of the great bodily enhancement following the preliminary hearing because the evidence presented at the preliminary hearing did not support the enhancement.  In the answer, respondent correctly argues that this claim is not exhausted.  Although this claim is not exhausted, the undersigned addresses this claim herein because it is without merit.  See 28 U.S.C. § 2254(b)(2) (an application for habeas corpus may be denied on the merits notwithstanding the failure to exhaust state court remedies).

The Sixth Amendment to the United States Constitution provides, in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be informed of the nature

and cause of the accusation."  The United States Supreme Court has found that, "[a] defendant's right to notice of the charges against which he must defend is well established."  <u>Gray v. Netherland</u>, 518 U.S. 152, 168 (1996); <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979) ("[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend.")

The evidence presented at the preliminary hearing regarding Wilson's injuries sustained during the April 6, 2014 incident gave petitioner the notice required by the Sixth Amendment for the great bodily injury enhancement.  Wilson's testimony regarding the photographs of the injuries she suffered on April 6, 2014, her testimony that she was diagnosed with a concussion following the incident, and Officer Stegner's description of Wilson's injuries, adequately supported the elements of the great bodily injury enhancement.  Based on this record, the undersigned finds that petitioner had adequate notice of the great bodily injury enhancement.  Therefore, this claim is without merit and should be denied.

VI.  <u>Alleged Brady Violation</u>

Petitioner raised his <u>Brady</u> claim in the California Supreme Court.  (Respondent's Lodged Document 14.)  The California Supreme Court denied this petition without comment or citation.  (Respondent's Lodged Document 15.)  Accordingly, the undersigned herein independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  <u>Stanley</u>, 633 F.3d at 860; <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

*Legal Standard*

The prosecution's suppression of evidence favorable to an accused violates due process where the evidence is material, irrespective of the good faith or bad faith of the prosecution.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1967).  Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999).  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial.  <u>See United States v. Bagley</u>, 473 U.S. 667, 676 (1985); <u>Maxwell v. Roe</u>, 628 F.3d 486, 509 (9th Cir. 2010).

1          *Discussion*

2          Petitioner alleges that the prosecution failed to disclose to his trial counsel evidence that

3   Wilson had previously suffered a prior felony conviction for giving false identification to a police

4   officer. In support of this claim, petitioner cites Exhibit H attached to the petition. Exhibit H

5   purports to be a summary of Wilson's criminal record. (ECF No. 1 at 52.) This document

6   indicates that on February 23, 2010, Wilson was convicted of giving false identification to a

7   police officer, a misdemeanor. (Id.)

8          For the following reasons, the undersigned finds that Wilson's conviction for giving false

9   identification was not material evidence. First, as noted by respondent, Wilson repeatedly

10  testified at trial that she had lied to the police about the various assaults. Based on this testimony,

11  evidence of her prior conviction for providing false identification had minimal probative value

12  and would have been cumulative. See Barker v. Fleming, 423 F.3d 1085, 1096 (9th Cir. 2005)

13  (evidence of defendant's prior convictions was duplicative and cumulative "where his proclivity

14  for lying had already been firmly established" by trial evidence). There is no reasonable

15  probability that the outcome of the trial would have been different had evidence of Wilson's

16  conviction for giving false identification been admitted.

17         Respondent also argues that petitioner has not met his burden of demonstrating that the

18  prosecutor suppressed Wilson's criminal record. Because Wilson's criminal records were not

19  material, the undersigned need not reach the issue of whether the prosecution suppressed these

20  records. But see Carriger v. Stewart, 132 F.3d 463, 480 (9th Cir. 1997) (the prosecutor had a duty

21  to disclose a witness's criminal records); Amadao v. Gonzales, 758 F.3d 1119, 1138 (9th Cir.

22  2014) (the prosecutor had access to, and an obligation to turn over, the conviction and probation

23  records of a prosecution witness who was prosecuted by the same office that prosecuted

24  petitioner).

25         After conducting an independent review of the record, the undersigned finds that the

26  California Supreme Court's denial of petitioner's Brady claim was not an unreasonable

27  application of clearly established Supreme Court authority. Accordingly, this claim should be

28  denied.

VII.  Alleged Improper Exclusion of Impeachment Evidence

Petitioner raised his claim alleging that the trial court improperly excluded impeachment evidence in the California Supreme Court.  (Respondent's Lodged Document 14.)  The California Supreme Court denied this petition without comment or citation.  (Respondent's Lodged Document 15.)  Accordingly, the undersigned herein independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

*Background*

Petitioner alleges that the trial court would not allow trial counsel's receptionist, Mrs. Brown, to testify regarding a telephone call she overhead between Wilson and petitioner on April 11, 2014.  (ECF No. 1 at 21.)  Attached to the petition is an unsigned statement by Brown, dated April 22, 2014, describing what she allegedly overheard:

> On 04/11/14, Mr. Joe Almeida arrived for his scheduled appointment at the Law Office of William A. Wright.  He was there to prepare his restraining order against his child's mother, Krystal.  According to Mr. Almeida, Krystal had been threatening and harassing him almost daily.  She would call his phone repeatedly and show up at his residence yelling and hitting him.
>
> During his appointment, Mr. Almeida received a phone call from Krystal.  He took the call in the office, where Joe, Dia (our paralegal), and I were all present.  Joe had his phone set on speaker phone.  This made the conversation very clear to anyone in the room.  My paralegal and I both heard Krystal threaten Joe in saying:
>
> "If I can't have my daughter, then neither can you.  I'll do whatever it takes to get your ass locked up.  I've done it before and I can do it again!"  --Krystal.
>
> Mr. Almeida had heard enough, and responded by hanging up the phone.  He seemed concerned and scared of what this woman might be capable of.  He proceeded with his restraining order and left shortly thereafter.

(Id. at 54.)

In the answer, respondent accurately cites the relevant sections of the transcript where the trial court addressed trial counsel's request to call Brown as a witness.

On October 14, 2014, during a hearing on in limine motions, trial counsel told the court that he intended to call Brown as a witness.  (RT at 23.)  The next day, trial counsel asked

Wilson about her relationship with petitioner:

> Q: Now, this relationship that you have had with Mr. Almeida, I believe you described as being up and down; is that correct?
>
> A: Correct.
>
> Q: Sometimes the two of you were high together?
>
> A: Correct.
>
> Q: And sometimes you were not; correct?
>
> A: Yes.
>
> Q: And at the times that you were angry, did you plan to do something to get him back?
>
> A: Yes.
>
> Q: Did you ever tell anybody that if you couldn't have the baby, then he couldn't either?
>
> A: Yes, I did.

(RT at 144-45.)

One week later, the prosecutor objected to allowing Brown to testify about overhearing Wilson's statements to petitioner during a telephone call petitioner received from her while at trial counsel's office: "she said, 'If I can't have my daughter then neither can you. I'll do whatever I can do to get your ass locked up. I have done it before, and I'll do it again,' on speaker phone." (RT at 229.) The prosecutor argued that this testimony would be hearsay, it would not be proper impeachment of Wilson and could potentially violate attorney-client privilege. (RT at 229-30.)

The following exchange then occurred:

> Court: No. I'm looking at what she said. The last question by Mr. Wright was basically whether she said that if she couldn't have the baby that he couldn't either in front of her client, and she confirmed that she did say it so there is no impeachment of her. She admitted it. She said it. If she denied it, then our witness would have some bearing on impeachment, but she acknowledged that she in fact said it.
>
> Trial Counsel: So are you saying that you're not going to allow her to testify?

25

| | |
|---|---|
| 1 | Court: I mean, it is not impeachment. |
| 2 | Trial Counsel: I just wanted to confirm that she made that statement, |
| 3 | "If I can get your ass locked up. I have done it before, and I can do it again. |
| 4 | Court: You didn't ask her that specifically. But basically it was a |
| 5 | statement that she had made that if she couldn't have the baby, your client couldn't either and then she acknowledged it. |
| 6 | Trial Counsel: I think it was in response to her learning that we |
| 7 | would be preparing a restraining order. I don't know if that's part of the conversation or not. I don't think so. |
| 8 | Court: I mean – it was just the last question she was asked. |
| 9 | Basically, whether or not she would be –if she had ever expressed some type of vindictive conduct against your client, and she |
| 10 | acknowledged that she had. |
| 11 | She pretty much acknowledged lying about everything and that she was trying to get back at your client when she made that statement |
| 12 | so—I'm just trying to understand the purpose of Ms. Brown. It is not really impeachment since she's acknowledging it. If she denied it, it |
| 13 | would be admissible. |
| 14 | Trial Counsel: I'll wait until the other witnesses are done and then if we need to argue about it, we'll argue about it. I don't know—I |
| 15 | believe what you say is correct and that is that it is not impeachment. It is only just confirmation of what she had said to Mr. Almeida on |
| 16 | the telephone. |
| 17 | Court: right. But, I mean, it is not –what would be the purpose of it if it is not impeachment? I mean, it is hearsay and it would be |
| 18 | admissible as, even though it is hearsay if you were impeaching her with a prior inconsistent statement, but she actually acknowledges it. |
| 19 | Trial Counsel: All right. |
| 20 | (RT at 23-32.) |
| 21 | During the finalizing of jury instructions, trial counsel told the court that he was |
| 22 | withdrawing Brown's statement. (RT at 265-66.) The defense rested without calling Brown as a |
| 23 | witness. (RT at 289.) |
| 24 | *Discussion* |
| 25 | In the answer, respondent argues that the trial court did not rule that Brown was not |
| 26 | permitted to testify. Respondent argues that the court only informed trial counsel that it did not |
| 27 | consider Brown's preferred testimony as proper impeachment, leaving the door open for counsel |
| 28 | to later argue the issue after other witnesses had finished testifying. Respondent argues that trial |

counsel did not pursue the issue and chose not to call Brown as a witness. Respondent argues that because the trial court never ruled that Brown was precluded from testifying, petitioner's claim is without merit.

The undersigned agrees with respondent. The trial court did not actually rule that Brown could not testify. For this reason, petitioner's claim is without merit. After independently reviewing the record, the undersigned finds that the denial of this claim by the California Supreme was not an unreasonable application of clearly established Supreme Court authority. However, even assuming that the trial court, in effect, denied trial counsel's request to call Brown as a witness, this claim is without merit for the reasons stated herein.

Under the Sixth and Fourteenth Amendments, "[t]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (citations and internal quotation marks omitted)). This includes the right of a criminal defendant to present witnesses in one's defense. Chambers v. Mississippi, 410 U.S. 284, 302 (1973). But this right is subject to reasonable restrictions "to accommodate other legitimate interests in the criminal trial process." United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987) (quoting Chambers v. Mississippi, 410 U.S. 284, 295 (1973))). Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. See id. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate. Id.

Even if the evidence is improperly excluded, however, petitioner is not entitled to relief unless he can show that the exclusion had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); DePetris v. Kuykendall, 239 F.3d 1057, 1063 (2001) (applying harmless error test to claim of denial of right to present a defense).

Brown claimed that she heard Wilson say, "I'll do whatever takes to get your ass locked up. I've done it before and I can do it again." During cross-examination, Wilson admitted that she had stated that if she could not have the baby, then neither could petitioner. On cross-

27

examination, Wilson did not directly testify that she threatened to have petitioner incarcerated, as Brown claims she overheard. Nevertheless, Brown's testimony was not impeachment, because it was not inconsistent with Wilson's testimony. See Cal. Evid. Code § 1202.

In addition, because Wilson was available as a witness, it is not clear how Brown's testimony would have been admissible, as it contained hearsay. Moreover, Brown's testimony was cumulative of Wilson's testimony, in which she admitted to doing thing to get back at petitioner when she was mad at him.

However, even assuming that Brown's testimony was admissible, the undersigned finds that any error in excluding it was harmless. As stated above, Wilson admitted that she did things to petitioner to get back at him when she was mad at him. Wilson also testified that she had lied to police when she told them that petitioner injured her. Brown's testimony was cumulative of this testimony. In addition, the evidence that petitioner assaulted Wilson in January and April of 2014 was strong. For these reasons, the exclusion of Brown's testimony did not have a substantial and injurious effect on the jury's verdict. Accordingly, petitioner's right to present a defense would not have been violated had the trial court excluded this testimony.

After independently reviewing the record, the undersigned finds that the denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

V. Petitioner's Motions to Expand the Record and for an Evidentiary Hearing (ECF Nos. 35, 41)

In the pending motions, filed November 2, 2018 (ECF No. 35), and May 2, 2019 (ECF No. 41), petitioner seeks to expand the record and requests an evidentiary hearing regarding his exhausted claims.

The Supreme Court held in Cullen v. Pinholster, 563 U.S. 170, 180 (2011), that the review of state court decisions under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Thus, federal habeas courts may not consider new evidence on claims adjudicated on the merits in state court unless the petitioner first satisfies his burden under § 2254(d) and then satisfies his burden under § 2254(e)(2). See Pinholster, 563 U.S. at 181-85; Holland v. Jackson, 542 U.S. 649, 652-53 (2004).

28

As discussed above, petitioner has not met his burden under 28 U.S.C. § 2254(d.). Accordingly, pursuant to <u>Pinholster</u>, petitioner's motions to expand the record and for an evidentiary hearing should be denied.

For the reasons stated herein, the undersigned further finds that the evidence petitioner seeks to develop at an evidentiary hearing as to his exhausted claims would not change the outcome.

In particular, petitioner seeks an evidentiary hearing to present evidence that counsel acted unreasonably in failing to present evidence of Wilson's May 2013 hospitalization and failing to present a drug recognition expert. Because the undersigned finds that petitioner failed to demonstrate prejudice with respect to these claims, evidence that counsel acted unreasonably would not change the outcome.

Petitioner also seeks to present evidence that the prosecutor knowingly failed to disclose Wilson's conviction for giving false identification, in support of his <u>Brady</u> claim. Because Wilson's conviction for giving false identification was not material evidence, a finding that the prosecutor knowingly failed to disclose this evidence would not change the outcome.

Finally, in support of his November 2, 2018 motion for an evidentiary hearing, petitioner provided two articles from the internet discussing the effects of GHB, in support of his claim that his trial counsel was ineffective for failing to call a drug recognition expert. (ECF No. 35 at 161-64.) Petitioner claims that a drug recognition expert could have testified regarding the effects of GHB, consistent with the information in these articles.

As discussed above, petitioner exhausted his claim that trial counsel was ineffective for failing to call a drug recognition expert. Petitioner presented a different article to the California Supreme Court regarding the effects of GHB. (Respondent's Lodged Document 14.) All three of these articles, i.e., the article presented to the California Supreme Court and the articles attached to the November 2, 2018 motion for an evidentiary hearing, contain very similar information.

The undersigned may not consider the two articles regarding GHB attached to the motion for an evidentiary hearing because they were not presented to the California Supreme Court.

Pinholster, 563 U.S. at 180.  However, were the undersigned to consider these new articles, for the reasons discussed above, the undersigned would find that there is no reasonable likelihood that the outcome of the trial would have been different had trial counsel called a drug recognition expert.

VI.  Petitioner's Motion to Stay

On December 10, 2018, petitioner filed a motion to stay in order to exhaust new claims. Petitioner seeks the stay pursuant to the procedures outlined in Rhines v. Weber, 544 U.S. 269 (2005).

Under Rhines, a district court must stay a mixed petition only if:  (1) the petitioner has "good cause" for his failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless"; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics.  Rhines, 544 U.S. at 278.  Petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" under Rhines.  Dixon v. Baker, 847 F.3d 714, 722 (2017).  The Supreme Court has held that a Rhines "stay and abeyance should be available only in limited circumstances" because staying a federal habeas petition frustrates the Antiterrorism and Effective Death Penalty Act's ("AEDPA") objective of encouraging finality. Rhines, 544 U.S. at 277.

Petitioner appears to request a stay to exhaust the following new claims.  First, petitioner alleges that the prosecutor violated Brady by failing to disclose Wilson's rap sheet.  Petitioner also argues that this trial counsel was ineffective for failing to investigate and present evidence of Wilson's April 6, 2014 hospitalization because these records demonstrated that Wilson did not suffer a concussion.

In the November 2, 2018 motion for an evidentiary hearing, petitioner also argues that he has discovered additional records from Wilson's May 2, 2013 hospitalization demonstrating that she was found on the courthouse steps after suffering an overdose.  Because Wilson was found on the courthouse steps, petitioner argues that the prosecutor must have known of her May 2, 2013 hospitalization.  Petitioner argues that the prosecutor committed Brady error in failing to disclose Wilson's May 2, 2013 hospital records.  In an abundance of caution, the undersigned finds that

30

1    petitioner seeks a <u>Rhines</u> stay to exhaust this new <u>Brady</u> claim.

2      Attached to petitioner's May 2, 2019 motion for an evidentiary hearing is a declaration by

3 Wilson dated February 25, 2019. In this declaration, Wilson states that the injuries she suffered

4 in April 2013 were due to GBH intoxication. Petitioner presents this declaration in support of his

5 unexhausted claim alleging that counsel was ineffective for failing to investigate Wilson's April

6 2013 hospital records. In an abundance of caution, the undersigned also considers whether

7 petitioner is entitled to a stay based on Wilson's February 25, 2019 declaration.

8      *Request for a Stay Based on Rap Sheet*

9      Petitioner appears to claim that he received Wilson's rap sheet from defense counsel in

10 August 2018. (ECF No. 39 at 8.) The rap sheet shows Wilson's criminal record, including the

11 following convictions: (1) 2008 conviction for misdemeanor receiving stolen property (Cal.

12 Penal Code § 496); (2) 2008 conviction for misdemeanor hit and run (Cal. Vehicle Code

13 § 200001(A)); (3) 2010 convictions for felony taking vehicle without owner's consent (Cal.

14 Vehicle Code § 10851(A)) and misdemeanor giving false identification to a peace officer (Cal.

15 Penal Code § 148.9 (A)); and (4) 2013 convictions for misdemeanor possession of

16 methamphetamine (Cal. Health and Saf. Code § 11377(A)). (ECF No. 35 at 136-39.)

17      In support of his exhausted <u>Brady</u> claim, petitioner cited a document listing the same

18 convictions listed in the rap sheet. (ECF No. 1 at 52.) Petitioner attached this document to his

19 petition filed in the California Supreme Court. (Respondent's Lodged Document 14.) Therefore,

20 petitioner knew of Wilson's criminal record well before he allegedly obtained the rap sheet from

21 defense counsel sheet in August 2018.

22      Because petitioner knew of Wilson's criminal record at the time he filed his habeas

23 petition in the California Supreme Court, petitioner has not shown good cause for his failure to

24 exhaust his unexhausted <u>Brady</u> claim before filing this action. <u>See</u> <u>Blake v.Baker</u>, 745 F.3d 977,

25 982 (9th Cir. 2014 ("a reasonable excuse, supported by evidence to justify a petitioner's failure to

26 exhaust," will demonstrate good cause under <u>Rhines</u>.)

27      For the following reasons, petitioner has also failed to show that his unexhausted <u>Brady</u>

28 claim is not plainly meritless. Assuming that the convictions identified in the rap sheet would

have been admissible to impeach Wilson, there is no reasonable probability that the outcome of the trial would have been different had the jury heard evidence of these convictions. As discussed above, the jury heard evidence that Wilson was not truthful. In addition, when trial counsel cross-examined Wilson regarding the January 26, 2013 incident, she testified that she was on felony probation at the time of this incident. (RT at 133.) Therefore, the jury had knowledge that Wilson had a felony criminal record. For these reasons, and because the evidence that petitioner assaulted Wilson in January and April 2014 was strong, there is no reasonable probability that evidence of Wilson's criminal record would have changed the outcome of the trial. Therefore, Wilson's rap sheet was not material evidence.

Because petitioner has not demonstrated that this <u>Brady</u> claim is not plainly meritless. petitioner's motion for a stay in order to exhaust this claim should be denied.

*Request for a Stay Based on Wilson's April 6, 2014 Hospital Record*

Petitioner argues that trial counsel was ineffective for failing to present evidence of Wilson's April 6, 2014 hospitalization because these records demonstrated that Wilson did not suffer a concussion on April 6, 2014. Petitioner claims that he obtained these records from trial counsel in June 2018. (ECF No. 39 at 8.) For the reasons stated herein, the undersigned finds that petitioner is not entitled to a stay as to this claim because he has not demonstrated that this claim is not plainly meritless.

Wilson's hospital records from April 6, 2014 contain a description of her injuries: "The patient complains of mild pain. The patient sustained a blow to the head. No loss of consciousness." (ECF No. 35 at 117.) The record goes on to state: "Clinical Impression…Concussion. Physical Assault." (<u>Id.</u> at 118.) The "triage" notes from April 6, 2014, state, "The patient had loss of consciousness." (<u>Id.</u> at 120.) A record from Sutter General Hospital titled "General Instructions" states that Wilson was evaluated for the following conditions: "Concussion. Physical Assault." (<u>Id.</u> at 123.) The "General Instructions" form also states, "You have been given the following additional information: Concussion (no wake-up). Please Read And Follow These Instructions Carefully." (<u>Id.</u>)

////

Petitioner argues that the April 6, 2014 records do not state that Wilson was actually diagnosed with a concussion. Petitioner argues that these records only contain a "clinical impression" that Wilson suffered a concussion. The undersigned is not persuaded by this argument. Wilson's April 6, 2016 records demonstrate that she was evaluated for a concussion and given information regarding concussions when released, indicating that she was diagnosed with a concussion.[5]

In any event, as observed by the California Court of Appeal, "some physical pain or damage, such as lacerations, bruises or abrasions is sufficient for a finding of 'treat bodily injury.' [Citations.]" People v. Washington, 210 Cal.App.4th 1042, 1047 (2012). Wilson's other injuries, which included bruising on her face, were sufficient to establish great bodily injury. Therefore, even if Wilson did not suffer a concussion, there was sufficient evidence to support the great bodily injury enhancement.

For the reasons discussed above, petitioner was not prejudiced by trial counsel's alleged failure to investigate and present evidence of Wilson's April 6, 2014 hospital records. There is no reasonable probability that the outcome of trial would have been different had these records been presented. Because petitioner has not demonstrated that this claim is not plainly meritless, petitioner's motion for a stay in order to exhaust this claim should be denied.

*Request for a Stay Based on Additional Records from Wilson's May 2, 2013 Hospitalization*

In the November 2, 2018 motion for an evidentiary hearing, petitioner argues that the new May 2, 2013 hospital records show that Wilson was found on the court house steps, suggesting that the prosecutor knew of these records and failed to produce them, in violation of Brady. Assuming the prosecution knew of Wilson's May 2, 2013 overdose at the court house, this evidence was not material because there is no reasonable probability that the outcome of the trial would have been different had this evidence been disclosed to defense counsel. See Strickler v.

---

[5]  The undersigned has reviewed the testimony of Nurse Enders, who treated Wilson on April 6, 2014. (RT at 232-41.) Neither the prosecutor nor defense counsel asked Enders about whether Wilson was diagnosed with a concussion. However, Enders testified that Wilson told her that she had been assaulted and lost consciousness. (Id. at 236.)

Greene, 527 U.S. at 280.  For these reasons, petitioner has not demonstrated that this <u>Brady</u> claim is not plainly meritless.  Accordingly, petitioner's motion for a stay to exhaust this <u>Brady</u> should be denied.

*Request for a Stay Based on Wilson's February 25, 2019 Declaration*

In her February 25, 2019 declaration, Wilson states that the injuries she suffered on April 20, 2013, i.e., fractured ribs, were caused by GHB intoxication.  (ECF No. 41 at 12.)  Petitioner submits this declaration in support of his unexhausted claim, discussed above, alleging that trial counsel was ineffective for failing to investigate and present evidence of Wilson's April 2013 hospitalization for injuries caused due to GBH intoxication.  Petitioner argues that Wilson's testimony that her April 2013 injuries were due to GHB intoxication would have bolstered her testimony that her April 6, 2014 injuries were due to GHB intoxication.

As discussed above, the evidence that petitioner caused Wilson's April 6, 2014 injuries was strong.  Assuming Wilson would have testified at trial that her April 2013 injuries were due to GHB intoxication, there is no reasonable probability that the outcome of the trial would have been different.  For these reasons, petitioner has not shown that this claim is not plainly meritless.  Accordingly, petitioner's motion for a stay to exhaust this claim should be denied.

VII.  <u>Miscellaneous Motions</u>

On November 2, 2018, petitioner filed a motion to file an oversized brief, i.e., his November 2, 2018 motion for an evidentiary hearing and to expand the record.  (ECF No. 34.)  Good cause appearing, this motion is granted.

On December 6, 2018, petitioner filed a motion for an extension of time to file a reply to respondent's opposition to his November 2, 2018 motion to expand the record and for an evidentiary hearing.  (ECF No. 38.)  On December 10, 2018, petitioner filed his reply brief, which included his request for a stay.  (ECF No. 39.)

Good cause appearing, petitioner's motion for an extension of time to file a reply brief is granted.  The reply brief filed December 10, 2018 is deemed timely filed.

////

////

34

1    Accordingly, IT IS HEREBY ORDERED that:

2    1. Petitioner's motion to file an oversized brief (ECF No. 34) is granted;

3    2. Petitioner's motion for an extension of time (ECF No. 38) is granted;

4    IT IS HEREBY RECOMMENDED that:

5    1. Petitioner's motions for evidentiary hearings and to expand the record (ECF Nos. 35,

6    41) be denied;

7    2. Petitioner's motion for a stay (ECF No. 39) be denied;

8    3. Petitioner's application for a writ of habeas corpus be denied.

9    These findings and recommendations are submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

14   he shall also address whether a certificate of appealability should issue and, if so, why and as to

15   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

16   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

17   2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

18   service of the objections.  The parties are advised that failure to file objections within the

19   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

20   F.2d 1153 (9th Cir. 1991).

21   Dated:  July 30, 2019

22

23   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

24

25   Alm1145.157

26

27

28

                                        35